## Stevens & Andrews v. Gainesville National Bank.

(Case No. 1606.)

1. EVIDENCE.— In a suit to recover money paid at the instance of defendant, a schedule of the amounts being incorporated in the petition, which described them as amounts paid on checks, which were briefly identified by number, payee and date of payment, the checks are admissible in evidence.

2. SAME.— Where the petition alleged that a check of a specified number was paid on the 7th of November, 1882, and when produced in evidence it was stamped "paid" on the 11th of December, 1882, the variance was not fatal; the payment itself, and not the specific date thereof, being the issuable fact.

3. PARTNERSHIP.— One whose interest in a business is confined to profits thereof, which by agreement with a third party are to be received by him as compensation for his services rendered in the business, he having otherwise no ownership or interest in such profits, is not a partner.

4. PARTNERSHIP.— In determining the question of partnership *vel non*, the court will look to the actual relation of the parties consequent upon their engagements, and in favor of creditors they will ordinarily apply the doctrine that the party who shares in the profits must also bear his share of the liabilities.

5. NEGLIGENCE.— When one of two contracting parties must suffer through the fraud of a third party, which was perpetrated in consequence of the negligence of one of the contracting parties in carrying out his agreement, the loss must be sustained by such negligent party.

6. JUDGMENT.— A party is not bound to prove that all the defendants are bound in order to recover against any one of them. Citing Keithley *v.* Seydell, 60 Tex., 78.

7. PRACTICE — ABSTRACT ERROR.— When the judgment of the court below attains the justice of the case, the court will not reverse for abstract error.

APPEAL from Cook. Tried below before the Hon. C. C. Potter.

Appellee sued appellants to recover balance claimed on open account, and interest at an agreed rate of twelve per cent. The petition alleged that $19,238.96 of the account was made by a firm composed of C. F. Stevens and C. A. Andrews, with Lindsay, Hemming & Co.; that defendant assumed said account; that a part of the balance of the account was made by defendants with Lindsay, Hemming & Co., and the remainder with appellee, and that Lindsay, Hemming & Co. had transferred the account to appellee. The balance claimed on the whole account was $5,009.27. Appellants pleaded in abatement, denying that their co-defendant Siesfeldt was their partner, and claiming their privilege of being sued in the county of their residence; also general denial, and specially that it was a part of the contract with appellee that it should only pay Siesfeldt's checks when they had cotton receipts attached to them; that appellee negligently permitted Siesfeldt to have access to cotton

receipts after they had been attached to checks, and the checks paid, whereby he was enabled to abstract the receipts and attach them to other checks, and appellee negligently paid such checks the second time on the same receipts, whereby not only was the deficit in the account claimed by appellee caused, but there would otherwise have been a large balance in their favor, for which they asked judgment over. Appellee replied that Siesfeldt had access to the receipts with the knowledge and consent of appellants. General verdict and judgment for appellee against all of the defendants for the full amount claimed.

In October, 1882, Lindsay, Hemming & Co. were bankers in the city of Gainesville, Texas, and so continued until about the 1st of November, 1882, when they organized the Gainesville National Bank, which assumed all of the liabilities of Lindsay, Hemming & Co., and all of the assets, including the account of Stevens & Andrews, were transferred to it. The transactions involved in this suit between Stevens & Andrews and Lindsay, Hemming & Co. commenced about the 7th of October, 1882, and continued on with the bank after its organization.

About the 22d of November, 1882, Siesfeldt became associated in business with Stevens & Andrews, and the balance of the bank's account was transferred to the debt of the new firm, or new account, as the case may be.

*Brown & Gunter* and *Hare & Head*, for appellants.

*Potter & Hughes* and *Davis & Garnett*, for appellee.

WALKER, P. J. COM. APP.— The first error assigned is, that the court erred in admitting the checks in evidence, because there was no allegation in plaintiff's petition under which they were admissible. The petition alleged the payment of several sums of money by the plaintiff at the instance and request of the defendants, the items whereof were shown and described in a schedule thereof, describing them as amounts paid on checks, which were briefly identified by number, or payee and date of payment. The evidence was clearly admissible.

The court did not err in admitting as evidence, check No. 121. The objection made was that it was dated " prior to the settlement alleged in plaintiff's petition, and not charged to have been omitted therefrom by fraud or mistake." It was not alleged, however, to have been included in such settlement. If the check was paid by the plaintiff at a date subsequent to the settlement, the proposition

made above can have no application. Nor was it ground to exclude the check " because it was stamped paid on the 11th day of December, 1882, whereas the petition alleged the payment to have been made on the 7th of November, 1882." The date of the payment was not such issuable fact that would constitute a variance if the evidence as to the time varied from that which was alleged. 1 Greenl. Ev., sec. 61. The appellants assign as error that " the court erred in the second and third charges to the jury, in this, that the facts, circumstances and contract between the parties showed that it was not the intention of the parties to form a partnership, and the court did not give the jury any rule by which to arrive at such intention." And, also, " in refusing the first and second charges asked by defendants, because the evidence shows that the parties did not intend to, and did not, form a partnership, and the court should have given the jury some rule by which to arrive at the intention of the parties."

The pertinency of the questions raised on the issue of partnership arises out of the plea of the appellants denying the partnership to support their plea of personal privilege to be sued in the county where they resided. The defendant Siesfeldt did not deny his liability as partner, nor does he appeal from the judgment. In order to entitle the plaintiff to recover against the appellants, it was not essential to the validity of the judgment that the liability of all of the defendants should be established. Keithley v. Seydell, 60 Tex., 80.

For jurisdictional purposes the essential test is, not whether as between themselves the defendants were partners, but whether they were liable as such to third persons dealing with them; whether, in other words, the plaintiff under the pleadings showed a joint cause of action against Siesfeldt as well as against his co-defendants.

The charge of the court pointed to in the foregoing assignment is as follows:

" If the defendants Stevens & Andrews and I. Siesfeldt entered into an agreement by which they were to engage in the purchase and shipment of cotton at Gainesville, Texas, and if it was their agreement or intention to become partners in relation to such business, you will find them to be partners. Or, if it was agreed between said Stevens & Andrews and said I. Siesfeldt that they should each have a share or portion of the profits of said business; that is, if the said Siesfeldt was to have an interest in said profits and own a part of the same, the said parties would then all be partners in said business and you will so find. But if, under the agree-

ment of said parties, the said Siesfeldt was only to receive part of the profits of said business as a compensation for his services rendered in the business, and had no interest or ownership in the said profits as such, then he would not be a partner of the said Stevens & Andrews and you will so find. The burden of proof is upon the plaintiff to establish that he was a partner."

This charge submitted the law fully and clearly, and is not subject to the objections that are urged against it. See Cothran v. Marmaduke et al., 60 Tex., 372, and authorities there cited, and Brinkley v. Harkins, 48 Tex., 225; Leggett v. Hyde, 58 N. Y., 279; Manhattan Man. Co. v. Sears, 45 N. Y., 797.

The charges asked do not directly controvert the correctness of the legal propositions and tests of the partnership propounded in the charge of the court, but they seem to aim to give a special importance and controlling consequence to what may have been the interpretation or meaning of the terms agreed to between them, under which they undertook to carry on their business, as construed by themselves. The charges asked and refused are as follows:

" 1st. In determining the question whether the defendants Stevens & Andrews were partners with Siesfeldt in the business of buying and shipping cotton, as alleged in plaintiff's petition, the real question is to arrive at the intention of the parties in making the contract; and, in order to arrive at that intention, you will consider all the language used in the contract between them, their relations to each other, and the manner in which the business was transacted. And the fact that the said Siesfeldt was to receive a part of the profits derived from said business will not of itself make him a partner of the said Stevens & Andrews, unless it was the intention of all the parties that he should become an owner of such interest in the profits of said business as it was agreed that he should have. 2d. If you believe from the evidence that it was the intention of all the parties that the said Siesfeldt was to be employed by the said Stevens & Andrews as their agent to transact certain business for them, and that the said Siesfeldt, as his compensation for his services, was to receive a portion of the profits derived from said business, this would not make him a partner with said Stevens & Andrews in such business, and you will so find by your verdict."

The legal propositions contained in the above instructions, as to the elements which constitute a partnership, as far as they go, are essentially the same, perhaps, as those embraced in the court's charge, but the rule presented in the first section, for determining whether the parties intended to form a partnership, would not be an accurate

or correct one so far as third persons dealing with them as partners are concerned, as applied to the evidence in the case.

Undue prominence, we think, is given to the matter of the intention of the parties. "The real question," says the instruction, "is to arrive at the intention of the parties in making the contract." This language imports an exclusiveness in the controlling effect of their mere intentions which might mislead; especially so in view of the fact that the court charged the jury that the intention or agreement of the parties to constitute their business association a partnership would have that effect. If it was not their real intention to form a partnership, but if in fact their agreement and acts had that legal consequence, at least, as to third persons dealing with them, it would have been a partnership.

The charge of the court placed the question of partnership *vel non* on two clear and distinct grounds: 1st, an actual agreement to that effect, or 2d, an agreement to share the profits, as such, of the business between all of the parties, as distinguished from compensation for the services of Siesfeldt rendered in the business. The "intention" in making the contract was not, therefore, made the real and controlling question, and correctly, too.

Illustrative of the rule we are applying, may be quoted the remarks of Judge Parsons: "This question, as to the intention of the parties, may be considered as presenting itself under three forms. . . In the second place, let us suppose the parties expressly make and carry out in act an agreement to enter into such community of property, or business and profit, as constitutes a partnership, and say nothing about partnership. The law now says, you intended to enter into partnership, you have carried out your purpose, and you are partners; and it is a matter of no moment that you have not given to yourselves this name. Here, also, the intentions prevail." Parsons on Partnership, marg. page 87.

Under this principle, it was giving a misleading effect to the instructions asked, to assume that the "real question" was as to the actual intention of the parties, because under the law, as it was correctly given, there was evidence which allowed its application to the second and alternative test of partnership as stated in the court's charge. In Cothran *v.* Marmaduke, 60 Tex., 372, discussing the point under consideration, Judge Watts stated the principle clearly thus: "In determining the question the court will look to the actual relation consequent upon the engagements of the parties, and in favor of creditors they will ordinarily apply the doctrine that the party who shares in the profits must also bear his share of

the liabilities. And it is said that it is applied as a rule of law. That to obviate its force and effect it is not sufficient that the parties did not intend a partnership, or that they intended there should be none. To do this, it must be shown that they intended and constituted a distinct and different relation excluding that of partnership." Citing Owens v. Mackall, 33 Md., 382; Parker v. Canfield, 37 Conn., 250; Eastman v. Clark, 53 N. H., 276; Leggett v. Hyde, 58 N. Y., 272.

The sixth and seventh assignments of error are as follows:

" 6th. The court erred in the sixth charge given to the jury, because the evidence showed that plaintiff was guilty of negligence, and the charge made the defense depend upon an agreement that Siesfeldt was not to have access to the tickets.

" 7th. The court erred in refusing the third charge asked by defendants, because the evidence shows that the plaintiff was guilty of negligence in permitting Siesfeldt to abstract the cotton tickets from its possession, and in cashing checks drawn on said tickets a second time."

Appellants allege that it was agreed that Siesfeldt should pay for the cotton purchased by him with checks on the bank having cotton tickets attached, and that the bank should pay no check unless accompanied by cotton tickets, and that the bank agreed to check out the tickets for Siesfeldt and to see that the business was conducted correctly and honestly. Appellant Andrews, the only witness produced to sustain the allegation, testified that it was agreed between him and the bank through C. C. Hemming, its cashier, that Siesfeldt should not have access to the cotton tickets after they went into the bank, and that the bank would safely keep the checks and check them out when cotton should be shipped, and that no check should be paid unless it had cotton tickets attached. Said Hemming testified that no checks should be paid unless accompanied by cotton tickets, but that it was not agreed that the bank should check out the tickets or that Siesfeldt should not have access to them, and that it was understood between him and Andrews that Siesfeldt should have access to the tickets in order to ship the cotton, and that Andrews would have to trust Siesfeldt that far. Andrews admitted that as early as December 8, 1882, he knew that Siesfeldt had access to the tickets and that he made no objection, and that all the alleged irregularities occurred after this date. Siesfeldt said that it was understood between him and Andrews that he (Siesfeldt) should have access to the cotton tickets. And Hemming and Siesfeldt each testified that Andrews knew that Sies-

feldt had access to the cotton tickets and that he made no objection. The charge complained of is as follows:

" If you believe from the evidence that it was agreed that the cotton tickets attached to the drafts drawn on plaintiff should be safely kept by plaintiff and that said Siesfeldt should not have access to said tickets after they were received by plaintiff except under immediate supervision of some of the officers or employees of plaintiff, so that he could not change or abstract the same, and if you further believe that in violation of said agreement the plaintiff, through carelessness or neglect, permitted the said Siesfeldt to abstract said tickets from the custody of plaintiff, and that said Siesfeldt did so abstract said tickets and did afterwards attach the same to other drafts drawn by him on plaintiff, and the same were paid by plaintiff, the said payments would not be a just charge against defendants. And if the plaintiff has charged the defendants in their account sued on in this case with any payments made on such drafts as aforesaid, you will deduct the same from the amount of plaintiff's accounts against defendants. But if there was no agreement that plaintiff should so keep the tickets that said Siesfeldt could not abstract them, and if said Siesfeldt did so abstract any of said tickets and attach them to other drafts drawn by him upon plaintiff, and the plaintiff paid such drafts, the same would constitute a valid charge against defendants."

The counter charge asked and refused predicated the liability of the plaintiff for moneys paid on checks drawn with cotton receipts attached, which may have been abstracted by Siesfeldt after having been previously used in payment for cotton purchases, on the proposition that if, under all the facts and circumstances as connected with the plaintiff's undertaking, as stated in regard to checking out the tickets for Siesfeldt, the plaintiff was negligent, it would be responsible therefor, and the defendants not liable as to such checks which were supported only with cotton receipts which had been previously used.

The charge of the court, we think, was correct, and presented the law applicable to the evidence under the issue. The understanding had between the appellants and the bank is not to be construed as an insurance by the latter against the possible frauds to be perpetrated by Siesfeldt, the partner, or very certainly the accredited agent of the former. Such an agreement does not imply a promise to forfeit to the defendants all such sums as they may have occasion to pay through the chicanery or knavery, by means of which they may be ingeniously imposed upon through the artifice of using twice

the same cotton receipt by Siesfeldt, under circumstances against which ordinary care and prudence could not protect itself.

The nature of the understanding seems to have had reference to the unwillingness of the appellants to trust Siesfeldt to draw in behalf of the firm unless upon the security afforded of having actual possession of purchased cotton evidenced by the cotton ticket to be attached to the check, and also the other cautionary measures indicated in the pleadings and the evidence. Such an agreement, made for the protection of the appellants against Siesfeldt, did not contemplate a guaranty by the bank against a clandestine and surreptitious abstraction of the cotton tickets by Siesfeldt, and the fraudulent device of attaching such, to other checks, whereby to obtain money from the bank on the firm account. But the court charged the jury that if the plaintiff, through carelessness or neglect in carrying out its agreement, enabled Siesfeldt to accomplish, in the mode alleged, the imputed fraud, the loss must fall on the plaintiff.

This was, we conceive, the proper rule to be applied, and there was no error in that portion of the court's charge, nor in the refusal to give that asked for by the defendants.

It is assigned as error that the verdict of the jury is excessive and contrary to the evidence, because the evidence did not show that the firm composed of Stevens & Andrews and Siesfeldt, if any such was formed, ever assumed the account contracted before the formation of the new firm. The account referred to, amounting to $19,238.96, was due and owing to Lindsay, Hemming & Co., the same parties with whom the account subsequently contracted by the appellants and Siesfeldt was made. The subsequent account was but the continuation of the same dealings so far as Stevens & Andrews were concerned; they were liable on both, and on the one neither more nor less than upon the other. When the partnership with Siesfeldt was formed, the balance before named was charged to the new firm. This did not otherwise affect the new firm's liability than to extend it to and include Siesfeldt, if the charge thus made by the transfer of the account had any effect other than existed otherwise. It did not increase the debt of Andrews, nor of Stevens, nor vary their liability; and if in this suit they are adjudged to pay both accounts, they cannot complain, unless the verdict against them for both sums is unwarranted under the pleadings and evidence; and they claim that such is the case because the allegation of the petition is that the former account was assumed by the new firm, and to that averment the plaintiff must conform by the proof. It is urged that no such proof was made. If it be so admitted, still, as far as Stevens &

Andrews are concerned, the evidence is sufficient, under the averment of their antecedent liability to pay said account, to warrant a judgment against them for both accounts, irrespective of whether the new firm was liable or not.

The petition shows that Stevens & Andrews primarily owed the first account, and the allegation that the new firm, which embraced Stevens & Andrews as a portion of its members, assumed its payment, is not inconsistent with the liability of said Stevens & Andrews; and whether Siesfeldt is liable with them or not, they certainly are liable. If the evidence showed that the new firm did not assume the debt, the allegation that Stevens & Andrews originally owed it would support a judgment against them. Under an appropriate prayer for general relief, the court will render such judgment as the facts authorize to be rendered according to the justice of the case. A party is not bound to prove that all the defendants are bound in order to recover against any of them. Keithley v. Seydell, 60 Tex., 78.

Siesfeldt does not appeal, and therefore does not complain of the judgment; the appellants cannot do so. If there is error, it is abstract error for which this court will not reverse. Where the result attains the justice of the case on its merits, the judgment will not be reversed for an abstract error. An error to be material, so as to require the reversal of a judgment, must be one that has not been waived, and that is prejudicial to the party complaining of it. Johnson v. Blount, 48 Tex., 45; and see Davis v. Loftin, 6 Tex., 489; Autrey v. Cannon, 11 Tex., 110; Wofford v. Thompson, 8 Tex., 222; Thompson v. Thompson, 12 Tex., 327.

We do not think the merits of this appeal require a discussion of any other grounds assigned as error, and are of opinion that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted November 28, 1884.]