# FEBRUARY, 1912.

---

### C. F. Freeman v. Huttig Sash & Door Company et al.

No. 2275. Decided February 5, 1913.

**1.—Partnership—New Partner—Antecedent Debts.**

One who becomes a member of an existing partnership does not thereby become liable for debts already incurred by it, in the absence of an agreement to that effect express or implied. The presumption is against the assumption of such liability. (P. 569.)

**2.—Same.**

No inference of personal assumption of previous debts of the partnership can be drawn from the fact that the new partner recognized the liability of the firm property for them; nor from his buying the interest of the retiring partner at merely its net value after such debts should be paid; nor from the fact that the new business received the benefit of goods for the purchase of which such debts were incurred by the old firm. (Pp. 569, 570.)

**3.—Partnership—Purchase of Partner's Interest.**

Though parties may intend no partnership, yet form one, the mere purchase by another of the interest of a partner in the firm with the intention of forming a corporation to carry on the business, not of continuing it as a partnership, would constitute the purchaser a co-owner, not a partner. But where the intention of incorporating was not carried out, the business being conducted about two months under the old firm name, managed by one of the former partners, purchasing goods and contracting debts therefor, the purchaser of

such interest, though taking no part in the management, since the business was conducted for his benefit, though no profits were made, became a partner and liable for firm debts contracted while it was so conducted. (Pp. 570-572.)

### 4.—Same—Case Stated.

On July 29th F. purchased the interest of one of three partners in a mercantile business, with the intention, jointly with the remaining partners, of forming a corporation to continue the business. Meantime the business, to keep it a going concern, was conducted under the name of the old firm and the management of one of the former partners until September 14th, when, its condition being unsatisfactory, the intention of incorporating was abandoned, and it was closed up by a receivership. Held that F. became personally liable as a partner for debts contracted in the conduct of the business after his purchase, but not for its previous debts. On debts for goods purchased and received by the firm before he bought an interest he was not so liable, though they were still on hand when he bought; on those purchases after he bought his interest he was liable; he was also liable for the debts for goods ordered before he bought but received afterwards, this being equivalent to a purchase by the new firm. (Pp. 567-572.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

Action by the Huttig Sash & Door Co., and others, interveners, to establish the personal liability of Freeman as a partner in the Independent Lumber Co., a business closed out by a receivership. Plaintiffs had judgment. Freeman prosecuted error, and on affirmance obtained writ of error from the Supreme Court.

*Locke & Locke,* for plaintiff in error.—Partnership is not a status created by operation of law. It is a relation which has its origin always and necessarily in an agreement of competent persons to be partners, or to do those things which characterize partners. Without such an agreement voluntarily and intentionally made by each member of the association partnership never exists, though co-ownership very often does. This is the rule of the common law, and for more than fifteen hundred years it has been the rule of the civil law. Story on Partnership, secs. 2-4; 1 Lindley on Partnership, 2-4; 1 Bates on Partnership, secs. 1-3; Pandectæ, 17, 2, 19-20; Rio Grande Cattle Co. v. Burns, 82 Texas, 50; Connally v. Lyons, 82 Texas, 664; Beecher v. Bush, 45 Mich., 188, 7 N. W., 785; Phillips v. Phillips, 49 Ill., 437; Central City Sav. Bank v. Walker, 66 N. Y., 424; Hubbell v. Woolf, 15 Ind., 204; Freeman v. Bloomfield, 43 Mo., 391; North Pac. Lbr. Co. v. Spore, 44 Or. 462, 75 Pac., 890; Webster v. Clark, 34 Fla., 637, 16 So., 601; Drennen v. London Assur. Corp., 113 U. S., 51; Wilson's Exrs. v. Cobb's Exrs., 28 N. J. Eq., 177; Coons v. Coons, 106 Va., 572, 56 S. E., 576; Hedge and Horn's Appeal, 63 Pa., 273.

By his purchase of Campbell's interest, Freeman became, not a partner, but a co-owner with Sewell and Yost, entitled to have the value of Campbell's interest determined by an accounting, or if necessary by a liquidation, and finally to have the ascertained value thereof paid over to him in money or in such equivalent of money as he and they might agree upon. Story on Partnership, secs. 307-308, 311-313, 346; Mechem on Partnership, secs. 29, 99-100; 1 Bates on Partnership, sec. 276; 2 Idem, sec. 999; 1 Lindley on Partnership, *363-364; 30

Cyc., 605; Carroll v. Evans, 27 Texas, 262; Carter v. Roland, 53 Texas, 540; Still v. Focke, 66 Texas, 715: Moore v. Steele, 67 Texas, 435; Keller v. Self, 24 S. W., 578; Taylor v. Fields, 4 Vesey, 396; Fourth Nat. Bank v. N. O. & C. R. Co., 11 Wallace, 624; Menagh v. Whitwell, 52 N. Y., 46; Deal v. Bogue, 20 Pa., 228; Reinheimer v. Hemingway, 35 Pa., 432; Sanborn v. Royce, 132 Mass., 594; Renton v. Chaplain, 9 N. J. Eq., 62; Witter v. Richards, 10 Conn., 37; Reece v. Hoyt, 4 Ind., 169; Chase v. Scott, 33 Iowa, 309; Nichol v. Stewart, 36 Ark., 612; Blaker v. Sands, 29 Kans., 551; Miller v. Brigham, 50 Cal., 615; Schalck v. Harmon, 6 Minn., 265; Patterson v. Chalmers, 7 B. Monroe (46 Ky.), 595.

Freeman's agreement to buy stock in a corporation which was to be organized to take over the business of the firm, but which in fact never was organized, did not make him a partner in the firm. The Drennen case hereinbefore cited is closely in point. Even an agreement to become a member of a copartnership upon specified conditions, accompanied by payment of money into the firm's treasury in advance, will not constitute one a partner if the conditions be neither met nor waived. Drennen v. London Assurance Corporation, 113 U. S., 51; Haskins v. Burr, 106 Mass., 48; Merrill v. Spurr, 143 Mass., 257, 9 N. E., 580; Rutherford v. Hill, 22 Or. 218, 29 Pac., 546; Hubbell v. Woolf, 15 Ind., 204; Hobart v. Ballard, 31 Iowa, 521; Hoile v. York, 27 Wis., 209; West Point Foundry Assn. v. Brown, 3 Edwards' Ch., 284; Fox v. Clifton, 6 Bingham, 776; Ex parte Turquand, 2 Montagu, D. & DeG., 339; Dickinson v. Valpy, 10 Barn. & Cress., 128; Capper's Case, 1 Simons, N. S., 178; Wood v. The Duke of Argyll, 6 Man. & Granger, 928; Gabriel v. Evill, 9 Meeson & W., 297; 30 Cyc., 358.

As there was no agreement for the formation of a new firm, however constituted, the immediate result of the sale was that: (1) Sewell, Yost and Freeman were co-owners of the assets and business of the old firm, but without any partnership relation; (2) Sewell and Yost were rightfully in possession of the firm's assets and business, vested with the right and charged with the duty of administering its affairs, ascertaining the value of the interest acquired by Freeman from Campbell, and either paying him the amount of such value themselves or liquidating the business and thus enabling him to realize on his share thereof. 2 Bates on Partnership, sec. 756; Keller v. Self, 24 S. W., 578; Gaut v. Reed, 24 Texas, 46; Horton's Appeal, 13 Pa., 67; Clark v. Wilson, 19 Pa., 414; Reinheimer v.. Hemingway, 35 Pa., 432; Reece v. Hoyt, 4 Ind., 169; Renton v. Chaplain, 9 N. J. Eq., 62; Chase v. Scott, 33 Iowa, 309; Blaker v. Sands, 29 Kans., 551; Schalck v. Harmon, 6 Minn., 265; Miller v. Brigham, 50 Cal., 615; Lamb v. Hall, 147 Cal., 44, 81 Pac., 228; Pease v. Dawson, 197 Ill., 340, 64 N. E., 366.

The powers and duties of the surviving partners of a firm dissolved by death, or the "stationary" members of a firm dissolved by the sale of one partner's interests, are well defined in the law, in so far as we are concerned with them in the present discussion. It is the right and duty of such liquidating members of a dissolved partnership to collect in the assets and convert them into money, and

therewith to discharge the liabilities. For the accomplishment of this end they may take such time, incur such expense, and adopt such methods as are reasonable and judicious in the circumstances of the particular case. If, for instance, the business is mercantile, they may purchase such relatively small amounts of new merchandise as are necessary to render salable the old stock on hand. But they cannot bind the shares of their cotenants by acts really done in the transaction of a new business and not in the liquidation of the old. If they wrongfully employ the estate of the dissolved firm in the doing of new business, and such new business results in loss; they must bear all of that loss themselves. They must account to their cotenants for their part of the old firm's net worth, together with interest thereon or a proportionate share of the profits earned, if any, as such cotenants may elect. This is the penalty for their breach of duty in dealing improperly with the trust fund in their hands. Story on Partnership, secs. 343-344; Mechem on Partnership, secs. 268-269; Oliver v. Forester, 96 Ill., 315; Roach v. Brannon, 57 Miss., 490; Tillotson v. Tillotson, 34 Conn., 335; Central Trust & Safe Dep. Co. v. Respass, 112 Ky., 606, 66 S. W., 421; Frey v. Eisenhardt, 116 Mich., 160, 74 N. W., 501.

In some circumstances the liquidating members of a firm dissolved by the death or selling out of one partner can bind that partner's interest in the common estate by their transactions subsequent to the dissolution. But in no circumstances can they, as such liquidating partners, bind the separate estate of the deceased partner without his clear agreement to that effect, or impose a personal obligation upon either the retiring partner or his vendee, by incurring a new debt in the name of the dissolved firm. Authority to do this can be founded only on a new partnership agreement or a special agency appointment. It is not to be implied from the fact that the liquidating partners incur debts in the name of the former firm without objection upon the part of their cotenants. The situation may be such that the liquidating partners have the right to bind the whole of the common estate; and even when it is not, their cotenants may be willing that this be done. Inasmuch as without their own participation their interests cannot be affected beyond the binding of their share of the common estate, when they are willing that it be so bound there is no reason why they should object, and no estoppel results from their failure to do so. Alexander v. Lewis, 47 Texas, 481; Burwell v. Cawood, 2 Howard, 560; Wild v. Davenport, 48 N. J. Law, 129, 7 Atl., 295; Brasfield v. French, 59 Miss., 632; Avery v. Myers, 60 Miss., 367; Merchants' & Planters' Nat. Bank v. Rice, 89 Ala., 201, 7 So., 647; Ex parte Richardson, 3 Maddock, 138; Stewart v. Robinson, 115 N. Y., 328, 22 N. E., 160; Butcher v. Hepworth, 115 N. Y., 328, 22 N. E., 163; Manhattan Oil Co. v. Gill, 103 N. Y. Supp., 364; Pitkin v. Pitkin, 7 Conn., 306; Exchange Bank v. Tracy, 77 Mo., 594.

Freeman was interested in the successful winding up of Independent Lumber Company's business, because he owned Campbell's share of its net avails, and also because he had endorsed its notes to Commercial Bank & Trust Company, and (at a time when he was expecting to be president of a corporation which would assume its liabilities)

had promised Craven that he would see his bill paid. All this did not entitle him to control the proceedings for liquidation; but it did render it entirely natural and proper for him to advise with Yost, who had charge of the business, and thus to do what he could to promote the welfare of all concerned. The giving of advice in such circumstances certainly is not evidence that Freeman consented when the concern was in liquidation to assume partnership obligations which he had declined to assume when it was supposed to present opportunities for large profit. Merchants' & Planters' Nat. Bank v. Rice, 89 Ala., 201, 7 So., 647; Butcher v. Hepworth, 115 N. Y., 328, 22 N. E., 163; In re J. H. Curlee & Co., 118 La., 563, 43 So., 165.

In the absence of special agreement for assumption, an incoming partner is not responsible for the existing debts of the firm which he joins, nor is the new firm brought into existence by his accession responsible for the debts of the old. It is not necessary that an incoming partner take affirmative action to avoid becoming liable for existing debts; he is not liable for them unless he affirmatively assumes them. Hence the burden of proving an assumption is upon one who seeks to charge him with an obligation incurred by the old firm. 1 Bates on Partnership, sec. 507; 1 Lindley on Partnership, *208; Story on Partnership, sec. 152; Mechem on Partnership, sec. 219; 30 Cyc., 614; Adkin v. Arthur, 33 Texas, 431; Oliver v. Moore, 43 S. W., 812; Baptist Book Concern v. Carswell, 46 S. W., 858; Gauss v. Hobbs, 18 Kans., 500; Wright v. Brosseau, 73 Ill., 381; Kountz v. Holthouse, 85 Pa., 235; Sternberg v. Callanan, 14 Iowa, 251; Parmalee v. Wiggenhorn, 6 Neb., 622; Paradise v. Gerson, 32 La. Ann., 532; Kling v. Tunstall, 109 Ala., 608, 19 So., 907; Wolff v. Madden, 6 Wash., 514, 33 Pac., 975.

The fact that property belonging to the old firm passes into the ownership and possession of the new, does not obligate the new firm and its incoming member to pay the debts of the old, not even debts for the purchase price of such property. Gauss v. Hobbs, 18 Kans., 500; Silliman v. Short, 26 La. Ann., 512; Brooke v. Evans, 5 Watts, 196; Donnally v. Ryan, 41 Pa., 306; Morlitzer v. Bernard, 10 Heiskell (57 Tenn.), 361; Duncan v. Lewis, 1 Duvall (62 Ky.), 183; Poindexter v. Waddy, 6 Munford, 418; Beale v. Mouls, 10 Q. B., 976; Whitehead v. Barron, 2 Moody & Robinson, 248; Saville v. Robertson, 4 Durnford & East, 720; Young v. Hunter, 4 Taunton, 582.

The common members of the old firm and the new cannot bind the incoming member of the new for a debt of the old without his consent, even by the most formal action, such as the execution of a note therefor in the name of the new firm. Much less can they bind him by failing to close the accounts and open new ones, or by paying old debts with money belonging to the new firm, or by any other informal or improper procedure of theirs. He cannot be bound for their debts unless he binds himself. Wright v. Brosseau, 75 Ill., 381; Shirreff v. Wilks, 1 East, 48; Fagan v. Long, 30 Mo., 222; Shamburg v. Ruggles, 83 Pa., 148; Newhall v. Wyatt, 22 N. Y. Supp., 828.

The incoming member's willingness that debts of the old firm be paid out of property belonging to the new, but received in part from the old, does not include or tend to prove his consent to be personally

liable for such debts. Eddy v. Hinnant, 82 Texas, 354; Beene v. Rotan Grocery Co., 110 S. W., 162; Wolff v. Madden, 6 Wash., 514, 33 Pac., 975.

Freeman acted all the time upon the belief that he was not a partner, but was the owner of an interest in the business which he had bought subject to its debts. If such was his position, the course of business was natural and correct. There was no occasion for closing old accounts and opening new ones. There was no reason for discriminating between old debts and new ones. Freeman had no right to object to the use of the firm's assets for the payment of its debts. Books, assets and debts alike appertained all the while to one and the same firm, active at first and in liquidation afterward. The course of business needs no explanation, save as it first is presumed that Freeman was a partner. Therefore, in rendering judgment against Freeman for the debts incurred before July 29th, the court founded one presumption upon another presumption, which never is permissible. Mo. Pac. Ry. Co. v. Porter, 73 Texas, 305; Baldwin v. Goldfrank, 88 Texas, 249; T. & P. Ry. Co. v. Nicholson, 22 S. W., 770; Crow v. Fidler, 23 S. W., 17; M., K. & T. Ry. Co. v. Thompson, 33 S. W., 718; Parks v. St. L. & S. W. Ry. Co., 69 S. W., 125; G., C. & S. F. Ry. Co. v. Matthews, 73 S. W., 413; M., K. & T. Ry. Co. v. Byrd, 124 S. W., 738.

In determining whether a particular debt is one of the new firm, and so binding upon the incoming member because he is a partner, or is a debt of the old firm and so not binding upon the incoming member without his special assumption of liability therefor, the date to be considered is the date upon which the firm gave its assent to the obligation. Or, at the latest, it is the date upon which the contract became obligatory by receiving the assent of both parties. Story on Partnership, secs. 146-152; 3 Kent's Commentaries, *36; Young v. Hunter, 4 Taunton, 582; Gardiner v. Childs, 8 Carrington & Payne, 345; Whitehead v. Barron, 2 Moody & Robinson, 248; Morlitzer v. Bernard, 10 Heiskell (57 Tenn.), 361; Silliman v. Short, 26 La Ann., 512; Brooke v. Evans, 5 Watts, 196.

*Hill & Webb* and *Spence & Baker,* for defendant in error, Huttig Sash & Door Co.—A partnership agreement with one's associates in business is not necessary to bind them as partners in their dealings with third persons. When Freeman bought Campbell's interest in the Independent Lumber Company, by and with the consent of Yost and Sewell, and was received into the firm by them in Campbell's place, he became a member of the partnership for all purposes. Cothran v. Marmaduke, 60 Texas, 370; 27 Am. & Eng. Enc. Law (3rd ed.), 15; Spencer v. Jones, 47 S. W., 29; Burnley v. Rice, 18 Texas, 481; Stratton v. O'Connor, 34 S. W., 158.

Freeman's advent into the firm neither created a new firm nor destroyed the old. It was a continuing partnership. Freeman became a member in Campbell's place, assumed his burdens, and the firm's obligations remained the same, and Freeman by his advent assumed and agreed to aid in bearing and sharing the firm's obligation. Mechem on Partnership, sec. 219.

*Holloway & Holloway,* for defendants in error, Florence Pump & Lumb. Co., Bluff City Lumb. Co., C. H. Nichols Lumb. Co., and Craven Lumb Co.—We may lay on one side the fact that the parties began with the intention to form a corporation. They did not understand that they were acting as a corporation. * * * The facts constitute evidence that the relation was a partnership by implied understanding until a corporation should be formed. It does not matter that it was not formally recognized, or that they may not have used the name to themselves, if that is the fair result of what they did understand and intend. Manson v. Williams, 213 U. S., 453 (53 L. Ed., 869); S. C., 82, C. C. A., 475, 480 (153 Fed., 525); In re Hudson Clothing Company, 148 Fed., 305, 307.

One is liable as a partner, who, having an interest in the business and a right to share the profits, suffers that business to continue. Miller v. Marx, 65 Texas, 131, 132.

Promoters who begin business before the corporation is formed, are liable as partners. Harrill v. Davis, 22 L. R. A. (N. S.), 1153; S. C., 54 C. C. A., 248; Martin v. Fendall, 79 Mo., 401.

When Yost sold lumber the money received therefor, the profit as well as the first cost of the lumber, was the money of Freeman, Sewell and Yost. Freeman, therefore, had a right in the profits and not merely a right to the profits. He was a partner. Dilley v. Abright, 19 Texas Civ. App., 489 (48 S. W., 548).

It is admitted that Freeman was "a co-owner of the business," "the owner of an interest in the business." This ends the question. "What we have to consider is whether the business, in respect of which the question of partnership arises, is or is not the business of the persons alleged to be partners." Cotton L. J. in Badeley v. Con. Bank, L. R. 38 Ch. Div., 239. "No one has ever doubted that, if the adventure is carried on for a person so that it is his business, then he is a partner." Lord Halsburg, L. C., in Adams v. Newbiggin, 19 Eng. Ruling Cases, 492.

*Joe A. Worsham,* for defendant in error, John A. Kettle.—Plaintiff in error purchased of Campbell his interest in the co-partnership with the understanding that he was to share in profits of the business, and his co-operation with Yost in its management constituted him a partner with respect to third persons, and particularly creditors, as a matter of law, irrespective of his intention. And in determining this question, as far as third persons are concerned, the court will look to the agreement and the acts done under it, and irrespective of the intention of the parties will attach to such agreement and such acts their legal consequences. In Texas, an agreement to share profits as principal, as a matter of law, imposes partnership obligations and liabilities, and the parties thereto cannot escape its legal consequences by an avowal of a contrary intention, or by an abortive attempt to form a corporation or a limited partnership. Cothran v. Marmaduke & Brown, 60 Texas, 370; Brinkley v. Harkins, 48 Texas, 225; Stephens & Andrews v. Gainesville Nat. Bank, 62 Texas, 499; Brown v. Watson, 72 Texas, 216; Cleveland v. Anderson, 2 App. Civ. Cas., secs. 147-8; Miller v. Marx & Kempner, 65 Texas, 131; Smith v. Bodine, 74 N. Y.,

30; Leggett v. Hyde, 58 N. Y., 278, 17 Am. Rep., 244; Hoss v. Baat, 16 Hun, 527; Greenwood v. Brink, 1 Hun, 227; Busdell v. Hettrick, 45 How. Pr., 198; Vornderburg v. Hull, 20 Wend., 70; Heimstreet v. Howland, 5 Denio, 68; Everett v. Coe, 5 Denio, 180; Burnett v. Snyder, 81 N. Y., 550; Richardson v. Hughitt, 76 N. Y., 55, 32 Am. Rep., 267; Eager v. Crawford, 76 N. Y., 97; Ford v. Smith, 27 Wis., 261; Nicholas v. Thielges, 50 Wis., 491; Smith v. Knight, 71 Ill., 148, 22 Am. Rep., 94; Neihoff v. Dudley, 40 Ill., 406; Meseror v. Andrews, 104 Mass., 360; Hoskins v. Burr, 100 Mass., 46; Mallows v. Court of Wards, 4 Moak., Eng. Rep., 121; Ross v. Parkyne, 13 Moak, 834, note 839; Exparte Tennant, 22 Moak, 831; Collyer, Partnership, secs. 170-72; Story, Partnership, sec. 27; Smith v. Watson, 2 Born & C., 401; Heron v. Hall, 13 Mon., 159, 35 Am. Dec., 178; Bartlett v. Jones, 2 Strange, 471; Whitcomb v. Converse, 119 Mass., 43, 20 Am. Rep., 311; Harvey v. Childs, 28 Ohio St., 319, 22 Am. Rep., 387; Cleveland Paper Co. v. Coucher Co., 67 Mich., 152-153; Eastman v. Clark, 53 N. H., 276, 16 Am. Rep., 192.

While the purchase of Campbell's interest did not entitle Freeman to become a partner in the business as a matter of law, yet such purchase need not necessarily have worked a dissolution of the partnership, as the same could be continued and he be given the rights and privileges of a partner by an agreement, either expressed or implied, between himself and associates, and it appears from the undisputed testimony in this case that such an understanding was had and that the plaintiff in error did not demand an accounting and liquidation of the old partnership business. 8 Cyc., 605, and authorities cited.

By associating himself with Sewell and Yost for the conduct of the business of the Independent Lumber Company without a bona fide attempt to incorporate under a valid law, and at least an apparent compliance with that law, and an assumption of corporate powers thereunder, plaintiff in error became liable to all persons having dealings with said company, as a partner, in the absence of estoppel to deny corporate existence. Clark on Corporations, 110; Eaton v. Walker, 43 N. W. (Mich.), 638; Guchert v. Hocke, 28 Atl. (Pa.), 249; Empire Mills v. Alston Gro. Co., 15 S. W., 200; Johnson v. Corser, 25 N. W. (Minn.), 799; Kaiser v. Bank, 8 N. W. (Iowa), 772; Pettis v. Atkins, 60 Ill., 454; Bigelow v. Gregory, 73 Ill., 197; Whipper v. Parker, 29 Mich., 380; Elliott v. Himrod, 108 Pa. St., 569; Garnett v. Richardson, 35 Ark., 144; Hill v. Beach, 12 N. J. Eq., 31; Abbott v. Refining Co., 4 Neb., 416; Wechelberg v. Bank, 64 Fed., 90; Coleman v. Coleman, 78 Ind., 346; Martin v. Fewell, 79 Mo., 401; Smith v. Worden, 86 Mo., 382; Williams v. Hewitt, 47 La. Ann., 1076, 17 La., 497; Duke v. Taylor, 19 So. (Fla.), 172.

*Chilton & Chilton,* for defendants in error, Neeley & Copeland.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

In this case we are called upon to determine the correctness of the decision of the Honorable Court of Civil Appeals for the Fifth District in affirming the judgment of the District Court of Dallas County

whereby the plaintiff in error, Freeman, was held liable as a partner for certain debts of the Independent Lumber Company, a partnership engaged in the lumber business at Dallas, contracted both before and after his association with it. The suit was instituted by the Huttig Sash and Door Company upon its debt, in connection with which an attachment was sued out and levied. Thereafter a receiver was appointed who took charge of all the assets of the company, including the property attached, all of which was subsequently sold and its proceeds held to abide the final judgment. Other creditors, parties to this appeal, intervened, all seeking to enforce the liability of Freeman as a partner.

The defendants in error contend that Freeman became a partner in the business on July 29, 1908. The debts sued upon are of three classes: (1) for goods ordered and delivered before July 29, 1908; (2) for goods ordered and delivered after July 29, 1908; and (3) for goods ordered before and delivered after July 29, 1908. By the judgment Freeman was held liable for debts of all these classes.

Prior to July 29, 1908, the partnership known as the Independent Lumber Company was composed of C. B. Yost, T. H. Campbell and J. T. Sewell, each owning a third interest. Because of his friendship for Yost, Freeman had endorsed for the firm in a few instances to enable it to borrow money for the conduct of the business. On July 29, 1908, after some negotiation, Freeman, with knowledge that indebtedness was owing by the firm, effected a purchase of Campbell's interest, known and assented to by Yost and Sewell, for the sum of $400.00, evidenced by a bill of sale executed by Campbell reciting the transfer of all his right, title, interest, etc. In making this purchase, Freeman did not agree to assume the payment of any of the firm's existing indebtedness. He did not intend to enter it as a partner; nor was there any agreement that he should become a partner. His purpose was, as it was of Yost and Sewell, that the business should be incorporated; and to that end articles of association were drawn and subscribed on August 6, 1908, but application for a corporate charter was refused by the Secretary of State because the proposed name of the corporation had been appropriated by another corporation. Because of Sewell's absence from the State, new articles were not then drawn. Freeman left the State for a trip on August 16th and was away until September 14th. The incorporation was not perfected on his return, or at any time afterward.

In the interval between July 29th and September 14th, Yost, as its active manager, conducted the business under the same name and in the ordinary course, as it had been conducted by him prior to Freeman's purchase of Campbell's interest, Freeman having no part in its control or management, nor any communication with any creditor; and, so far as shown, it still being the intention of all parties that the corporation should be formed.

A few days after his return to Dallas on September 14th, Freeman discovered that the condition of the business was not as favorable as he had supposed, and informed Yost that he did not care to proceed any further with the matter; that he wanted the business wound up, and that it would be well to sell it if possible. Thereafter he dis-

cussed the situation with Yost,.advising that only such purchases be made as might be necessary to work off the stock on hand; that sales be made for cash to provide for the payment of creditors, and if possible that a purchaser for the business be found. He gave advice respecting the collection of accounts and other matters affecting the conduct of the business in this manner, but it may be said that other than as stated he took no part in its direction. The business was thereafter so conducted and such was his relation to it to the time of the institution of the suit.

In short, the record presents a case of this character: The purchase, without an express assumption of liability for existing indebtedness, of the interest of a partner in a going concern by one who does not intend to become a partner and is not by agreement received as such, but whose intention, shared by the other owners, is only to become a stockholder in a corporation to be immediately formed for the conduct of the business. The formation of the corporation is deferred and finally abandoned. During the time that the formation of the corporation is merely suspended, from July 29th to September 14th, the purchaser, without any participation in its management, suffers the business to be conducted in the ordinary course, under the same name, by the active manager of the original partnership. About September 14th, he determines to proceed no further and counsels the liquidation of the business or its sale. From that time until December 30th, when a receiver took it in charge, the business is conducted with this end in view, but nevertheless as an existing business, without his active participation in its management, but to some extent with his direction.

It is an accepted rule in the law of partnership that one who becomes a member of an existing partnership does not thereby become liable for debts already incurred in the absence of an agreement to that effect, express or implied. The presumption of law is against the assumption of such liability. 1 Bates on Partnership, sec. 507; Story on Partnership, sec. 152; 1 Lindley on Partnership, sec. 206; Baptist Book Concern v. Carswell, 46 S. W., 858; Oliver. v. Moore, 43 S. W., 812; Sternburg v. Callanan, 14 Iowa, 251; Wright v. Brosseau, 73 Ill., 381; Gauss v. Hobbs, 18 Kans., 500; Kountz v. Holthouse, 83 Pa., 235; Wolff v. Madden, 33 Pac., 975; Dean v. Collins, 9 L. R. A., note, p. 57 (New Series).

It is not contended that in his purchase of Campbell's interest in this firm there was any express agreement on Freeman's part to assume any liability for the existing indebtedness, nor is there anything in the record from which such an agreement may be fairly implied. In this connection it is only shown that he recognized the property of the firm was subject to its debts; that he did not expect to obtain Campbell's interest free from the debts; that he did expect the intended corporation to pay them in taking over the property, and that he later advised Yost to apply proceeds of sales to their payment irrespective of the time of their creation. But the law will not construct a personal liability upon Freeman's recognition of a legal status of the property imposed by indebtedness with the creation of which he had no connection, nor upon his mere intention that

it should be paid by a corporate association that was never formed, which, if effected, would have exempted him from such liability. His liability for these prior debts, if it exists, must rest upon agreement, created either by express assent or resulting by legal implication from proof of such facts or circumstances as fairly indicated a purpose to become personally bound for their payment. There is nothing in this evidence that indicates that such was his intention; its tendency is in support of the contrary conclusion.

Nor will such an agreement be implied from the amount paid by Freeman for Campbell's interest. That amount may have been reckoned as the value of such interest after deducting the liabilities of the firm, but it cannot be said that the purchase of a partner's net interest in a business is of itself sufficient to create an assumption of his individual liability for existing indebtedness. Freeman recognized that he took Campbell's interest in the assets charged under the law with the payment of the debts, but there is a marked distinction between ownership of property burdened with a debt and personal liability for the debt itself. For the same reason the fact that the business as constituted after Freeman's purchase of Campbell's interest received the benefit of goods then on hand for which the old firm was indebted, did not render Freeman personally liable for such debts. If it be considered that the result of such purchase was the creation of a new firm, there was no novation of this indebtedness, and it retained its character as an obligation only of the old firm. The rule has been definitely announced that an incoming partner is not rendered liable for such debts because the new firm receives and uses as stock the old firm's property. Brooke v. Evans, 5 Watts, 196; Duncan v. Lewis, 1 Duvall (62 Ky.), 183; Morlitzer v. Bernard, 10 Heiskell (57 Tenn.), 361; Poindexter v. Waddy, 6 Munf. (Va.), 418.

We now pass to the consideration of the question of whether Freeman became a partner with Yost and Sewell following his purchase of Campbell's interest in the firm, upon the decision of which depends that of his liability for the two other classes of debts sued on. A decision of the question requires first, the ascertainment of their actual relation, and then the determination of whether a partnership was thereby constituted, giving effect to their intention, if possible, but having regard for the rule that parties may intend no partnership and yet form one. Cothran v. Marmaduke, 60 Texas, 370; Beecher v. Bush, 45 Mich., 188. There is no doubt but that Freeman had no partnership relation in view when he acquired Campbell's interest, or as to its being his purpose that his only association with the business should be that of a stockholder in a corporation to be formed for its conduct. In this initial stage of his connection it is clear that his status was simply that of a co-owner, having none of the elements of a partnership relation. The intended corporation, however, was not formed. While the purpose to form it still remained, it became necessary to defer it; and it was deferred as by common consent until the return of Freeman from his eastern trip. The business, though, went on, exactly as it had theretofore, under the same name, still under Yost's active management, in the full guise of a going concern,

and in the full exercise of its ordinary functions. It did not cease its operations to await the organization of the corporation, and it does not seem to have been considered that it should do so. It continued to make sales and to contract indebtedness for goods as in ordinary course throughout this entire interval; and, with the qualification that its scope was narrowed for the possible purpose of liquidation after Freeman's return in September, it may be said to have been operated as a going concern down to the time of the appointment of the receiver.

The question that arises is, did Freeman remain simply a naked co-owner during this period, or by such operation of the business with his knowledge and acquiescence, as is shown by the record, did the relationship of the parties undergo such change and assume such a nature as to create a partnership in law? There is nothing in the record to indicate that the continuance of the business in this manner was merely for the benefit of Yost and Sewell, or that its operation was other than for the equal benefit of the three owners and their common profit. Freeman, as has been stated, knew that it was being actively conducted, and permitted it, if not with approval, certainly without interference. He entrusted the management of his interest to Yost, and must have known that it was being devoted to the common object of the business. As completely as did either Yost or Sewell in respect to their interests, he dedicated his interest to its purposes and aims, not by express direction, it is true, but by tacit agreement, having all the force of positive authorization. No other interference can be indulged than that his intention was that it should share the general fate of the business during this entire period. It amounted to a contrbution to the capital, and it will not be supposed that he thus permitted its use without the expectation of sharing in whatever profits it might help to produce, in which his right to participate must, at all events, be conceded. Manson v. Williams, 213 U. S., 453. The result, necessarily, was the creation of a relation between Yost, Sewell and himself, as principals, that amounted to an agreed joinder of their interests in a common enterprise, its prosecution for their joint account, and an ensuing right in each of them to share in its net returns as such. He ceased to be a naked co-owner when, by a clearly implied agreement, he permitted his interest to be put to work as capital in the business. He thereby became a partner under elementary principles of the law upon the subject. It is immaterial that the business yielded no profits, and that in consequence Freeman shared in none. There existed by his tacit agreement a community of interests, the common enterprise, its operation for the joint account, and a right in the owner of each interest to share as a principal in its profits as such, which under the established rule in this State is a recognized test of the relation. Miller v. Marx, 65 Texas, 131; Stephens and Andrews v. Bank, 62 Texas, 499; Kelley, etc., Company v. Masterson, 100 Texas, 38; Dilley v. Abright, 19 Texas Civ. App., 487, 48 S. W., 548. The law recognizes that partnership is the creature of contract, but it is not essential that parties agree to become partners by name, or that their agreement be an express one.

If by implied agreement they assume a relation that the law constitutes a partnership, they become partners in fact.

It is unnecessary to review the authorities, which are numerous, covering many different aspects of the relationship, and have been diligently presented in the able briefs of counsel for both the plaintiff and defendants in error. The question is resolved at last by a general principle, which furnishes an accurate and conclusive test and is as safe and authoritative a guide as an imposing number of adjudicated cases. Holding as we do that Freeman became a partner in the business, he was liable for the indebtedness sued on that was contracted after July 29, 1908.

We likewise hold that the new firm, and Freeman as a member of it, were liable for the third class of debts here involved; that is, those contracted before July 29, 1908, for goods delivered thereafter, as those transactions were equivalent to a direct purchase of such goods by the new firm.

The debt of the plaintiff below, Huttig Sash & Door Company, was that of the first class we have discussed, for which Freeman was not liable. Its debt being due by the old firm, it acquired no lien upon the property of the new firm seized under its attachment. 1 Bates on Partnership, sec. 555; Schneider v. Roe, 25 S. W., 58; Meyberg v. Steagall, 51 Texas, 351.

Freeman should not be held liable, in our opinion, for the first class of debts herein discussed—that is, those that were contracted prior to July 29, 1908, for goods delivered before that date; but we approve the holding of the Honorable Court of Civil Appeals that he should be held liable for the second and third classes—that is, those contracted after July 29, 1908, for goods ordered and delivered subsequent to that date, and those contracted before July 29, 1908, for goods ordered before and delivered after that date. As the record furnishes us with no finding of fact that enables us to accurately classify the debts of all the defendants in error, it becomes necessary to remand the case. The judgments of the District Court and the Court of Civil Appeals are therefore reversed and the cause remanded with instructions that judgment be rendered upon the claims of the several defendants in error in accordance with this opinion.

*Reversed and remanded.*