## THOMPSON v. VAN HOWELING.
### No. 3704.

Court of Civil Appeals of Texas. Amarillo.
May 4, 1932.

W. W. Kirk and L. D. Griffin, both of Plainview, for plaintiff in error.

C. D. Russell, of Plainview, for defendant in error.

HALL, C. J.

On November 15, 1929, Tom Thompson, plaintiff in error here, sued defendant, Van Howeling, alleging in substance:

That plaintiff and defendant were interested in a great number of transactions beginning in March, 1928, and ending in December, 1928. That during said time, acting together, they purchased a considerable number of cattle in different lots, upon different dates, and from various owners. That they handled said cattle, leased a large tract of land upon which the cattle were placed and kept by them, and that the lease expired in January, 1929. That the cattle so purchased were sold by them for profit. That the plaintiff gave all of his time to such business, in finding cattle to be purchased, and in buying and helping to buy them, in moving them from the place where they were purchased, in selling some of them and placing the remainder in the leased pasture and looking after those retained in the pasture. That he kept the pasture fence in repair, etc.

That, prior to the transactions referred to, the defendant had been engaged in buying and selling cattle with other parties, furnishing the capital while the other parties helped to buy, handle, and sell the cattle, and in such business the profits, if any, were equally divided between the defendant and such other parties. That plaintiff, at the time of entering into the business with defendant, and prior thereto, knew of the business relations which had existed between defendant and such other parties, and was familiar with the manner in which said business was conducted, and the defendant knew that plaintiff had such knowledge. That prior to and at the time plaintiff and defendant engaged in such business plaintiff had been purchasing, handling, and selling cattle for profit for himself and with other parties, such other parties furnishing the capital, and upon the sale of the cattle, the profits, if any, were divided between plaintiff and such other parties, which facts were known to the defendant. That, while plaintiff and defendant were so engaged, they sold a number of the cattle which they had purchased and handled, deriving profits therefrom, and from the profits so realized defendant at one time paid plaintiff $500, and on several occasions thereafter had paid the sum of $150, aggregating the sum of $950. That on or about December 20, 1928, after defendant had paid plaintiff $150 as part of the profits of the business, defendant offered plaintiff one-fourth of the profits then made on the cattle, which plaintiff refused, and thereupon defendant informed plaintiff that he (plaintiff) could quit having anything to do with the cattle then on hand. That said cattle had been parceled out to farmers under arrangement with farmers to look after them in the way of grazing them on wheat and feeding bundle stuff, and defendant informed plaintiff that he (defendant) could look after the cattle and handle them without plaintiff's aid.

Plaintiff further alleges that he could and would have continued to handle the cattle and assist in selling the remainder; that the market value of the cattle on hand on December 20, 1928, was a certain sum of money, which, with the price obtained for the cattle that had been sold, less all expenses incurred in the purchase, handling, and sale thereof, was $14,472, to one-half of which, to wit, $6,286, plaintiff was entitled, and for which he prayed judgment.

On October 17, 1930, Thompson filed his first amended original petition. On October 23, 1930, he filed his second amendment, and on February 9, 1931, he filed his third amended original petition.

On February 9, 1931, defendant in error filed his amended original answer, in which, among other defenses, he interposed the two-year statute of limitation against the cause of action set up by the third amended original petition; said defense being raised both by exception and plea.

The court sustained the exceptions, the judgment reciting that, after examining and considering all of the pleadings of plaintiff and hearing the argument of counsel thereon, the court finds that the cause of action alleged in the third amended original petition is a new and different cause of action from any theretofore pleaded by plaintiff, and, said third amendment having been filed more than two years after the cause of action accrued, it is barred by limitation.

We have read the pleadings referred to and think the court has committed reversible error. The cause of action asserted in the third amended original petition is practically the same as is asserted in the original petition, the only difference being that in the third amendment the plaintiff sets out in detail the dates of the numerous transactions which occurred between March and December, 1928, giving the number of cattle purchased and sold at the time of each transaction, the name of the party from whom the purchases were made, as well as the names of

the various purchasers, and, in fact, if any objection could be urged against the pleadings, it is because matters of evidence are alleged with great particularity.

 While the plaintiff, Thompson, did not charge in verbis that the relationship out of which his cause of action arose was a partnership, the facts alleged clearly show that plaintiff and defendant were partners. In order to create a partnership, it is not essential that there be an express agreement to enter into such relationship. As said by Judge Phillips in Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, 125, Ann. Cas. 1916E, 446: "If by implied agreement they assume a relation that the law constitutes a partnership, they become partners in fact. It is unnecessary to review the authorities, which are numerous, covering many different aspects of the relationship. * * * The question is resolved at last by a general principle, which furnishes an accurate and conclusive test and is as safe and authoritative a guide as an imposing number of adjudicated cases."

The same doctrine is announced in Bolding v. Camp et al. (Tex. Com. App.) 6 S.W.(2d) 94, 95, in the following language: "Partnership, of whatever kind, rests in agreement of associates. Inter sese nomenclature is of but small importance, and the fact that parties may stipulate that they are not to be partners is not controlling (against outsiders at least) if, in truth, they concur upon those things which the law allocates to partnership relations; yet agreement, resting in expressed words or implications projected by words or acts or both, is a sine qua non. Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 571, 153 S. W. 122, Ann. Cas. 1916E, 446, and cases cited. This is true of so-called 'mining partnerships,' as of others for ex vi necessitate a 'joint working,' etc., imports an agreement to that end; expressions to the effect that 'a mining partnership arises by operation of law' must be understood as presupposing 'operation of law' upon facts exhibiting an expressed or implied agreement— this has many illustrations in the criticism of the charge given the jury in Randall et al. v. Merideth et al. [76 Tex. 669, 13 S. W. 576], supra. The basic inquiry here, then, is whether there be evidence of a partnership agreement."

See, also, Steger v. Greer (Tex. Civ. App.) 228 S. W. 304.

■ This being a partnership according to the allegations of the petitions, the issue of limitation is controlled by R. S. art. 5527, subdiv. 3, which bars the right of action after four years instead of two, as held by the trial judge. Hinkley v. Brewer (Tex. Civ. App.) 274 S. W. 227; Easley v. Clay (Tex. Civ. App.) 16 S.W.(2d) 888.

■ The Forty-Second Legislature amended the limitations statute (chapter 115, § 1), 16 Vernon's Ann. Tex. Stat. art. 5539b, which provides: "Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation. no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence," etc.

The purpose of this enactment, of course, was to change the established rule which barred a recovery or defense upon additional grounds which were not pleaded, although they previously existed, until after the bar was complete. This act is applicable to this case.

For the reasons stated, the judgment is reversed, and the cause is remanded.