WILLIAM DAVISON, JR., AND ANOTHER *vs.* MILTON D. HOLDEN AND ANOTHER.

Fairfield Co., March T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The defendants with sundry others associated themselves, without incorporation, under the name of the Bridgeport Co-operative Association, for the purpose of procuring provisions at a lower rate for the members. Sales were made to non-members at a higher rate, but no profits were expected beyond the payment of the expenses of management. The members held meetings and elected officers, and the officers employed the defendants as managers to conduct the business. The defendants as such managers bought and sold goods, paying the receipts to the treasurer. Held that the individuals composing the association were liable for goods purchased by the managers for the benefit of the association.

A statute (Gen. Statutes, p. 417, sec. 7,) provides that "any number of persons associated and known by some distinguishing name may sue and be sued and plead and be impleaded by such name." And another statute (Gen. Statutes, p. 403, sec. 9,) provides that the individual property of the members of such an association shall not be liable to attachment or levy of execution in a suit brought against the association as such. Held that the individuals composing such an association do not acquire by force of these statutes any immunity from individual liability, and that it is optional with a creditor to bring a suit against the association as such or the individuals composing it, the only difference being that in the former case he can levy only on the property of the association.

[Argued March 15th—decided April 1st, 1887.]

ACTION for groceries sold by the plaintiffs to the Bridgeport Co-operative Association; brought originally before a justice of the peace, and, by appeal of the plaintiffs, to the Court of Common Pleas, and heard in that court, on a general denial, closed to the court, before *Hall, J.* The defendants were Milton D. Holden and Patrick Tate, who were the president and treasurer of the association, which was unincorporated. The following facts were found by the court.

The goods described in the bill of particulars were sold

by the plaintiffs to the Bridgeport Co-operative Association, and the defendants were cognizant of the sale. The association was an unincorporated association of Bridgeport having that name. It conducted a retail meat-market business, under that name, having a sign bearing that name over its place of business, and giving its orders in that name. The object of the association was to sell goods to its members, and generally to workingmen, at a price not exceeding the actual cost of the goods and of the management of the business. It did, in fact, sell to the public generally. Individuals became members of the association by subscribing such a sum of money, from fifty cents to five dollars, as they desired. The individual members numbered about fifty, in addition to which another association consisting of about seventy-five members, was a member of this association.

It was not intended that the members of the association should receive, nor have they received, any profit or benefit from the business, other than as above stated, nor was it intended that there should be, nor has there been, any profit whatever to the association in the business. All the members who obtained goods at the market, purchased and paid for the same, in the same manner as persons not members of the association.

The members of the association held meetings and elected officers, who had the superintendence of the business. They, or some of them, visited the market in the evening, two or three times each week. They employed one or two persons to manage the business. Such manager did the buying and selling, and arranged the business generally, reporting and paying over the receipts of the business to the treasurer or some other officer of the association.

The defendants were members of, and themselves purchased goods of the association, and at the time of the purchase of the goods of the plaintiffs Holden was its president and Tate treasurer. It did not appear what amount either of the defendants subscribed to become members of the association.

Except as may appear from the above facts, it did not appear that any of the members of the association ever held themselves out as partners, or as liable as individuals, for the obligations of the association, or that the plaintiffs, or any other persons, ever gave credit to them, either as individuals or as co-partners.

Except as herein found, the members of the association entered into no agreement of co-partnership among themselves, and into no agreement or understanding by which they or any of them should become personally liable for the debts of the association.

The association failed in business in July, 1884.

Upon these facts the plaintiffs claimed that the defendants were liable, either as co-partners or as individuals, for the debt.

The court overruled this claim, and held that the defendants were not liable, either as individuals or as co-partners. The plaintiffs appealed.

*G. W. Wheeler* and *H. J. Curtis,* for the appellants.

1. The defendants are liable as partners, doing business under the firm name of the Bridgeport Co-operative Association, to the plaintiffs for goods sold by them to the association. The issue is between men who are members and officers of an unincorporated association carrying on a retail meat-market business and a creditor who sold goods to the association. It is undisputed that the association was formed for the purpose of carrying on trade, and that the goods sold were purchased by the association in the regular course of its business. The principals in a business may make any or no agreement as to the extent of their liability between themselves, but when the question of their liability to creditors arises, the law, and not their agreement or lack of agreement, determines their liability. *Everitt* v. *Chapman,* 6 Conn., 347; *Bucknam* v. *Barnum,* 15 id., 72; *Manning* v. *Gasharie,* 27 Ind., 400; *Sheridan* v. *Medara,* 2 Stockt. Cha., 469; *Berthold* v. *Goldsmith,* 24 How. 542; *Wells* v. *Gates,* 18 Barb., 554.

2. The defendants, as members and officers of an unincorporated association, are individually liable for the debts of the association which were contracted, assented to or ratified by them. In our complaint we have described the defendants as partners, following the mode of procedure in the case of the *Boston & Albany R. R. Co.* v. *Pearson*, 128 Mass., 449. If the defendants were not partners the erroneous description is mere surplusage. We have sued Holden and Tate; the judgment in any case would run against the individuals. *Manning* v. *Gasharie*, 27 Ind., 400; *Chick* v. *Trevett*, 20 Maine, 462; *McGreary* v. *Chandler*, 58 id., 538; *Hess* v. *Weitz*, 4 S. & R., 358. Since the carrying on of business was the purpose of this association, each member authorized the carrying of it on, and since these defendants were elected officers of the association, to superintend the business, each member authorized the carrying on of business under their superintendence. The defendants themselves conducted the business under a commission from the members of an association of which they were members. They not only authorized the purchase, they made the purchase; they were cognizant of it and assented to it. In *Robinson* v. *Robinson*, 10 Maine, 240, subscribers to a voluntary subscription paper, the object of which was the erection of an academy for public purposes, were each held liable for work done by a person hired by their agent. The court say—"By the contract the defendant bound all the subscribers jointly. It may operate hardly on him to be compelled to pay the whole sum due, still as one of the joint contractors he was liable, and each was liable for the whole." In *Manning* v. *Gasharie*, 27 Ind., 400, an unincorporated association was formed for the purpose of conducting a retail business under the name of "The Farmers' Union Store." The object of the association was the promotion of the interests of the producing class, by relieving them from the payment of the intermediate profit of the retail dealer, and the business was conducted on this basis. One of the articles of association was—"No debt shall be contracted by the association, or by any person in its

behalf." The suit was brought against certain members of the association, as partners, on a note signed by the agent, reading, " I promise &c.," signed " D. Chapell, Agt.," given by him for goods purchased for use in the store." The court held that the officers of the association, to whom was entrusted the care and supervision of the business, and the manager appointed by them, were the general agents of the members of the association, and that the members were bound by their acts done within the general scope of the business, although contrary to their private instructions; following the rule laid down in 2 Kent's Com., 620, where it says that " the acts of a general agent, or one whom a man puts in his place to transact all his business of a particular kind, will bind his principal so long as he keeps within the scope of his authority, though he may act contrary to his private instructions; and this rule is necessary to prevent fraud and encourage confidence in dealing." In the early cases against associations formed for social and benevolent objects, the courts held that, not being incorporated, they were mere partnerships in their relations to third parties. *Beaumont* v. *Meredith*, 3 Ves. & B., 180; *Babb* v. *Read*, 5 Rawle, 158. The rule has been modified in England and in some of the United States, and in these states, where all unincorporated associations are not held to be partnerships, it is held that while the officers, manager or committee of an unincorporated association formed for social or benevolent purposes, are individually liable for any obligation incurred by them, or under their direction, the members are not individually liable, unless they assented to the purchase when made, or ratified it after it was made. *Ash* v. *Guie*, 97 Penn. St., 498. In our case the members joined the association for the express purpose of carrying on a business; they therefore assented to every act done by their agents within the ordinary scope of that business. *Manning* v. *Gasharie*, 27 Ind., 400. But we are suing the officers of the association. They must be held responsible for their own acts, or that of their agent acting within the scope of the purposes of the association. *In re St. James Club*, 16 Jurist,

1076; *Flemyng* v. *Hector*, 2 M. & W., 171; *Ash* v. *Guie*, 97 Penn. St., 493; *Singer* v. *Daniels*, 66 Barb., 432; *Robinson* v. *Robinson*, 10 Maine, 247; *Fredendall* v. *Tayler*, 23 Wis., 538; *M'Carter* v. *Chambers*, 6 Wend., 650. The cases against members of an association wherein the courts refuse to consider the association partnerships are uniformly cases where it is stated that the purpose of the association is not trade, business or profit, and hence no partnership, and where it is clearly intimated that had the purpose been trade, business or profit, the association would have been held a partnership. *McMahon* v. *Rauhr*, 47 N. York, 70; *Lafond* v. *Deems*, 81 id., 512, and cases above cited. We believe the Bridgeport Co-operative Association is a partnership; but if it is not, some one must be liable, and under the rule of the English cases and *Ash* v. *Guie*, 97 Penn. St., 498, it is clear (1) that the defendants, officers of this unincorporated association, are individually liable for this purchase made by them or their agent for this association; (2) that every member of this association is personally liable, because the purchase of these goods was within the scope of the business of the association, and within the authority of the officers who conducted the business.

*R. E. DeForest* and *F. W. Holden*, for the appellees.

1. Are the defendants upon the facts found liable as partners to the plaintiffs for the debt described in the bill of particulars? The defendants certainly did not contract this debt as partners, for they were not partners. The members of the Bridgeport Co-operative Association were not partners as between themselves, and they were not partners as to the public and as to these plaintiffs as a part of the public. To constitute individuals partners as between themselves there must be an express agreement or clear understanding between them to become partners, or to do those things which make them partners. That there was no such agreement or understanding here is evident from the finding. And many of the essential elements of a partnership are entirely wanting. Swift, (Digest, Vol. 1,

p. 337,) defines a partnership as " a contract between two or more persons by which they join together their money, goods or labor for the purpose of trade, upon an agreement that their gain or loss shall be divided proportionally." We find substantially the same language employed by all the standard writers. 3 Kent Com., 24; 1 Parsons on Cont., 147; Collyer on Part. (Perkins ed.), 6. Here was no joining together of money, goods or labor for the purpose of trade. Here was no agreement that the gain or loss should be divided. The only payment of money was a voluntary contribution of such small sums as each individual felt disposed to give, ranging from fifty cents to five dollars, towards a charitable purpose, upon which contribution he was considered a member of the association. To speak of this as an investment of capital for purposes of trade seems to us in the highest degree preposterous. No division of profits or profits to divide were dreamed of, and equally foreign to the imagination of these men was it that by giving small sums to charity they thereby legally obligated themselves to donate much larger amounts on the ground of sharing business losses. The members of the association derived no benefit whatsoever from the market aside from what the public generally enjoyed. Upon these facts it is perfectly obvious that no partnership in fact existed. *Lamont* v. *Fullam,* 133 Mass., 583 ; *Holmes* v. *Old Colony R. R. Co.,* 5 Gray, 58; *Pillsbury* v. *Pillsbury,* 20 N. Hamp., 90 ; *Newman* v. *Bean,* 21 id., 93 ; *Rice* v. *Austin,* 17 Mass., 197 ; *Satler* v. *Ham,* 31 N. York, 321; *Perrine* v. *Hankinson,* 6 Halst., 181. But next, it is equally plain that the defendants as members of that association are not estopped from denying that they were partners as against the plaintiffs. In order to estop parties from denying a partnership, where in fact no partnership exists, two facts must be established : 1st. That the persons estopped held themselves out as partners to the party claiming the partnership. 2d. That the party seeking to avail himself of the estoppel by reason of such holding out, has believed in the existence of such partnership and given credit in the transaction in

question upon the strength of such belief. Collyer on Partnership, 19; *Vice* v. *Anson*, 7 Barn. & Cress., 409; *Dickinson* v. *Valpy*, 10 id., 140; *Wood* v. *Pennell*, 51 Maine, 52; *Denithorne* v. *Hook*, 112 Penn. St., 40; *M'Lewee* v. *Hall*, 103 N. York, 639; *Eastman* v. *Clark*, 53 N. Hamp., 276; 5 Wait's Actions & Defenses, 113. In the present case there is no finding of any holding out by the defendants of themselves as partners to any one.

2. The remaining question is, does the finding disclose any individual liability of these defendants for this debt? We are at a loss to know upon what ground the plaintiffs claim such liability. The action was not commenced upon that theory. We have been summoned into court as partners, under the firm name of " The Bridgeport Co-operate Association." A bill of particulars filed in the justice court, where the case was first tried and decided against the plaintiff, charged the defendants as partners. It appears to have occurred to the plaintiff in the Court of Common Pleas for the first time that there was an individual liability distinct from a partnership. The proposition of the plaintiffs upon this part of the case is, that these goods were sold and delivered to Milton D. Holden and Patrick Tate individually. There is not the slightest indication anywhere upon the record that the plaintiff at the time of the sale and delivery knew of the existence of Holden and Tate, and it of course cannot be inferred that any credit was given to them in the transaction. On the other hand it affirmatively appears that the credit was given, and that the goods were sold to " The Bridgeport Co-operative Association, an unincorporated body," a body that under the statute of the state could be dealt with, trusted and sued, as though incorporated. There is, therefore, no conceivable ground upon which the defendants can be individually liable, unless it be that the association was acting as agents for the defendants, as undisclosed principals, who being since discovered can now be held. To maintain this position it would have to be shown, precisely as required in the claim of an actual partnership, that it was really the intention of these defendants individ-

ually to purchase, own and pay for these goods, and that they authorized the association to buy them for them individually. Not only is this claim entirely unsupported, but it is most decidedly refuted by the facts found. It is perfectly evident that neither of these defendants nor any one else ever imagined for a single moment that they (the defendants) individually were purchasing, or had any title whatever to, the articles bought and sold in that market. If this had been so the defendants would not have purchased portions of these same goods from the association, as found by the court, but could, and undoubtedly would, have pursued the much simpler and more economical course of helping themselves to the exclusion of every one else, without the inconvenient formality of payment; for surely a man may do what he will with his own. On the contrary the understanding of the defendants and others belonging to the association, was that the association, acting as a corporation, should buy upon its credit, and that each member had no title or interest in or to the stock in trade of the store, more than any other member of the entire public. Certainly, therefore, there can be no possible foundation for the idea that in reality Holden and Tate were the actual principals—purchasing, owning, having the right to use or dispose of, and therefore liable to pay for these articles.

PARDEE, J. The defendants with sundry other persons associated themselves under the name of the Bridgeport Co-operative Association, an unincorporated trading association. They established a meat market. Their purpose was to buy at wholesale, and to retail to any person who would buy, regardless of membership, and to the members at such a price as would relieve them from paying at least one middleman's profit. Each member contributed something to the starting fund, the amount determined by himself. No profits were anticipated beyond payment of the expenses of management. The members held meetings and elected officers; these employed managers to conduct the business; these last bought and sold, paying the receipts to the treasurer.

One of the defendants was president, the other treasurer. Upon request of the managers the plaintiffs sold merchandise to the association; this suit is for the price thereof.

It did not otherwise appear than from the above facts that any of the members of the association ever held themselves out as partners, or as being liable as individuals, for the obligations of the association; or that the plaintiffs or any other persons ever gave credit to them, either as individuals or as partners; or that the members entered into any agreement of co-partnership among themselves; or into any agreement or understanding by which they or any of them should become personally liable for the debts of the association. The defendants claimed that they were not liable either as individuals or as co-partners.

The determination of the controversy as to the liabilty of the defendants depends not at all upon the question whether they and the other associated individuals were partners as between themselves; nor upon the question whether as between all of the associates and strangers they were such; but upon the law of agency. If the defendants clothed an agent with unrestricted authority to buy, they must pay, regardless of the other questions.

Upon the record the defendants, with others undisclosed, associated themselves for commercial purposes, for their pecuniary advantage. For convenience they transacted business under an assumed associate name; sent their managers and agents into the market with unrestricted authority to buy goods and pledge their credit under that name; to buy for the benefit of all jointly and of each individually. In the due execution of the authority conferred upon them they contracted the debt in suit and pledged the joint and several credit of the associates. As a matter of law the plaintiffs, in giving credit to the associate name, gave credit to the individuals whom upon inquiry should be found to stand behind it.

It is of no legal significance that the defendants did not intend to be individually responsible, or that they did not know or believe that as a matter of law they would be, or

that they intended that the goods when bought should become the property of the association. Having given to the agent unrestricted authority to buy, their secret intent as to the ultimate destination of the merchandise is of no avail. The rule that he who instructs his agent to buy can be made to pay, stands quite independent of intent or knowledge; he who buys by an agent buys by himself, and the law imputes to him knowledge that he must pay, and the corresponding intent to pay, for what he buys.

The statute permits individuals to unite under a distinguishing associate name for trading purposes; but they do not thereby acquire either corporate powers or immunity from individual liability. If they choose so to do they can institute a suit for the common benefit in the assumed name; also they may be made defendants under the same name. If the latter, execution will go against common property of the association as such and not against individual property. If, disregarding the fact and form of association, the suit is against all of the individuals, execution will go against the individual property of any. A suit may be instituted against them as individuals, as at common law, if the plaintiff will take the risk of naming all and of naming them correctly. If he names only a part of those who should be named, a plea in abatement may be interposed specifying omitted names; if no such plea is interposed those who are named are properly sued and must submit to judgment. If the associated persons send an agent into the market with unlimited authority to make purchases and contract debts in the name and for the benefit of the association, and the agent discloses the name of the association and not the names of the individuals composing it, the creditor may, if he is content to look only to the property of the association as such for his security, institute his action against the association by its distinguishing name. If he desires to reach the individual property of members he must institute his suit against such and so many of them as he can name, as individuals; he may do this even if the sale was made and the credit given in form to the association and the name of

no individual member was then known to him. He may do this for the reason that he gave credit upon the request of a known agent for an unknown principal. By operation of law the credit was to the principal from the beginning, to be enforced whenever he can be discovered.

There is error in the judgment complained of.

In this opinion the other judges concurred.