**CONNELLEE et al. v. NEES.  (No. 2163.)** *

(Court of Civil Appeals of Texas.  Amarillo.
June 20, 1923.  Rehearing Denied
Oct. 3, 1923.)

**1. Mines and minerals ⬥97—Evidence held to
show partnership.**

Evidence *held* to establish the relationship
of partners between persons engaged in drilling
oil wells for others.

**2. Joint-stock companies and business trusts
⬥15(1)—Relationship with resultant lia-
bility for negligent injury of servant held es-
tablished.**

Where an association created and conducted
for the purpose of operating an oil-drilling out-
fit employed one in such drilling, *held* that, if
the association be deemed as operating under
a trust agreement rather than as a partnership,
there was resultant liability of the individual
members for all liabilities, including negligent
injury of the employee.

**3. Trial ⬥255(13)—Any error by omission in
special issue should have been met by re-
quest for instruction.**

In an action by an employee against an
association engaged in operating an oil-drilling
rig, either as partners or as a company under
a trust agreement, any error in submission of
the issue as to whether defendants were en-
gaged in a "joint enterprise" was one of omis-
sion, and should have been met by request for
further definitions or explanations.

**4. Pleading ⬥228 — Refusal to consider at
trial special exception held not abuse of dis-
cretion.**

In an action by an employee for damages for
injuries sustained and for a balance due as
wages, refusal of the court to consider a spe-
cial exception to plaintiff's petition on the
ground that there was a misjoinder of causes
of action *held*, under articles 1824, 1825, not
an abuse of discretion; the pleadings on both
sides having been on file for some time, and
the matter complained of being such as should
have been added as an amendment to the an-
swer.

Appeal from District Court, Wichita Coun-
ty; P. A. Martin, Judge.

Action by G. L. Nees against T. W. Con-
nellee, H. T. Pangburn, and others.  From
judgment for plaintiff, the named defendants
appeal.  Affirmed.

Slay, Simon, Smith & Morris, of Fort
Worth, and Bonner, Bonner & Sanford, of
Wichita Falls, for appellants.

T. B. Greenwood and W. B. Chauncey, both
of Wichita Falls, for appellee.

KLETT, J.  This suit was instituted by
G. L. Nees against the defendants, Massie
Drilling Company, T. W. Connellee, Miss L.
D. Connellee, Joe M. Collins, H. T. Pang-
burn, and T. O. Massie.  The defendant Joe
M. Collins died while the suit was pending,
and the executors of his estate, G. Morton

and W. R. Edrington, were made parties de-
fendant by an amended pleading.  The plain-
tiff sought recovery of damages for personal
injuries alleged to have been sustained by
him in the course of his employment on Au-
gust 19, 1920, while working as a "derrick
man" on a drilling rig negligently operated
by defendants in the oil fields of Wichita
county.  The Massie Drilling Company was
alleged to be a joint-stock company and al-
so a partnership composed of and owned by
the defendants named.  Appellants denied
under oath the partnership alleged.  In an-
swer to special issues the jury found:  (1)
That the defendants, their agents, servants,
or employees, were negligent in the manner
in which they operated said machinery and
the manner in which they discarded said
joint of casing at the time of plaintiff's in-
jury; (2) that such negligence was the proxi-
mate cause of the plaintiff's injury; (3) that
the defendants Pangburn, Massie, Collins,
and Connellee were engaged in a joint enter-
prise known as the Massie Drilling Company
prior to August 19, 1920; (4) that they were
so engaged on August 19, 1920; and (5)
that the sum of $10,000, if paid now, would
fairly and reasonably compensate the plain-
tiff for the injury he received.  A verdict was
directed in favor of Miss L. D. Connellee on
the ground that the evidence was insufficient
to show her liability.  Judgment was ren-
dered upon the answers of the jury in favor
of plaintiff against the other defendants for
the sum of $10,000.  From this judgment the
defendants T. W. Connellee and H. T. Pang-
burn have appealed.

The sufficiency of the evidence to show
partnership having been attacked by the ap-
pellants, a brief statement of the material
facts is here submitted:  G. L. Nees, 27 years
of age, was employed by T. O. Massie "to
work for a concern operating under the name
of Massie Drilling Company," and he "worked
for that company from the 26th of May until
the 19th of August of the same year, 1920,"
when he was injured.  T. O. Massie testified
that he "was supposed to be working for the
Massie Drilling Company"; that he was em-
ployed by Joe M. Collins; that Collins stated
"that he was acting for the Massie Drilling
Company"; that Massie "was superintend-
ent of the field work for the Massie Drilling
Company on August 19, 1920"; that he was
the only one in Wichita county that had
charge of the field work for the company;
that "this company deposited moneys in the
banks here, to be used in paying off these
men, at the beginning, but later on they did
not"; that later on he looked after the whole
affair, which was in his own name; that the
funds he used was money taken down on his
contract; that he had made contracts for
drilling wells; that he did not remember
whether they were in his name or in the
name of Massie Drilling Company; that he

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

did not remember whether he told the parties whom he was representing; that the office of the "Massie Drilling Company is supposed to be in Joe M. Collins' office, Fort Worth, Tex."; that he had been in the office; that he was not a member of the Massie Drilling Company; that he was supposed to be, but never had anything to show that he was; that they did tell him they were issuing him stock in the Massie Drilling Company, should it ever be organized; that he did not know whether the Massie Drilling Company was ever organized or not; that Joe M. Collins made him that promise; that Joe M. Collins was "claiming to be acting at that time for the Massie Drilng Company as secretary and treasurer"; that he saw literature in the office of the Massie Drilling Company in Fort Worth, Tex., relative to the operation of the company, being the prospectus and stock certificate marked Exhibits 1 and 2; that he was in the office when J. M. Collins signed and mailed the stock; that he "met Mr. Connellee in Mr. Collins' office"; that he did not realize any profit from the well on which plaintiff was injured; that under the employment with Collins they realized profits from the wells drilled on Burk-Northern, but the profits were never paid; that he does not know why they were never paid; that they realized something like $5,-000; that he was never paid for the contract; that the balance is still owing; that he did not know that Pangburn or Connellee was ever connected with the Burk-Northern; that he never saw any great quantity of this literature, which was introduced in evidence before the jury, prepared for mailng in the office of Mr. Collins; that he saw some of it in Merriam Brokerage Company's office; that some of it was in envelopes; that this "rig was supposed to have been in use by the Massie Drilling Company on August 19, 1920, at the time Mr. Nees was injured"; that the reason for saying "supposed" is that he did not know whether the company was ever organized; that it was his understanding that the name of the concern that was using this rig at the time was the Massie Drilling Company; that Joe M. Collins turned the rig over to him, and that well supplies were charged to the Massie Drilling Company.

The literature referred to by the witness and introduced in evidence reads as follows:

#### Exhibit No. 1.

"Massie Drilling Company. Capitalization, $100,000.00, a sound security. General office, 202–203 Bone Building, Fort Worth, Texas. Fiscal agents, Merriam Brokerage Company, 205–206 Bone Bldg., Fort Worth, Texas.

"*Cornerstone of Expectations.* Massie Drilling Company. Joint-stock association; capitalization, $100,000. Officers and directors: President, T. W. Connellee, Fort Worth, Texas, secretary and treasurer, Joe M. Collins, Fort Worth, Texas, director and general superintendent, T. O. Massie, Fort Worth, Texas, director, Miss L. D. Connellee, Fort Worth, Texas, director, H. T. Pangburn, Fort Worth, Texas, attorneys, McLean, Scott & McLean, Fort Worth, Texas. Depositary, National Bank of Commerce, Fort Worth, Texas.

"*Introduction.* Oil, the greatest money-making commodity of the commercial world, needs no introduction. The wonderful development in the vast fields of proven territory in the state of Texas is the subject of discussion you hear on every hand, yet the demand is by oil companies and lease owners, greater production, more wells, regardless of cost. The following ad in local papers explains the situation: '$100.00 Reward. For information where I can get a driller with a rig.' Drilling companies are paying enormous dividends regardless of wells drilled being large or small producers. You want a safe investment with enormous profits, where risk is eliminated. This we offer in the Massie Drilling Company, where science is applied and honesty of purpose prevails. In presenting this prospectus, we ask you to investigate the personnel of our company and the security, we offer, a proposition that is strictly business, fair and square. An investment where handsome profits are not in doubt.

"*Organization.* Massie Drilling Company is associated under the laws of the state of Texas in the amount of 100,000 shares, par value $1.00 each. Fully paid and nonassessable. Control of the company is vested in a board of directors who pledge all assets for payment of liabilities and exempt the shareholders, officers, and directors from personal liability.

"*Purpose.* The purpose of the company shall be to contract for the drilling of oil wells to prospect for and mine petroleum in all its forms, acquire and own oil land and leases, machinery and appliances, buy and sell oil and gas, but especially to drill oil and gas wells by contract.

"*Management.* The management of the company is composed of men active in the business affairs of Texas. They are men whose reputations are beyond question; their method and proposition being offered is a fair one, and above criticism.

"*T. W. Connellee, president.* Mr. Connellee is actively engaged in the management of his extensive oil and real estate investments, and brings to this company the conservative policy that has characterized the successful management of his large and varied interests in Texas.

"*Joe M. Collins, Secretary-Treasurer.* Mr. Collins attested his ability in business, also his integrity as a man, while purchasing agent of the city of Fort Worth, and later serving two terms as district clerk of Tarrant county, now engaged in oil and real estate investments.

"*T. O. Massie, Director and General Superintendent.* Mr. Massie, in addition to his technical knowledge of the oil business, brings to this company the practical training of ten years' experience with large companies in the production of oil.

"*Miss L. D. Connellee, Director.* Miss Connellee is well known as a woman of sterling worth and sound business judgment and gives reliable assistance in the efficient management of this company.

"*Mr. H. T. Pangburn, Director.* Mr. Pangburn has demonstrated exceptional executive ability in the management of his extensive commercial enterprises, thus extending an aggres-

sive business policy to the Massie Drilling Company."

The stock certificate which the witness says he saw signed and mailed read as follows:

### Exhibit No. 2.

"Massie Drilling Company, Certificate for 100 shares issued to Mrs. S. N. Jordan. No. 47. Dated May 25, 1920. Shares, 100. Capital Stock, $100,000. Massie Drilling Company, Fort Worth, Texas.

"This certifies that Mrs. S. N. Jordan is the holder of 100 shares of the par value of one dollar each, in the Massie Drilling Company, being an undivided equitable interest in all the real and personal property at any time held by the trustees under a declaration of trust made on the eleventh day of November, 1919.

"Any holder and each successive transferree hereof is charged with notice of all the terms and provisions of said declaration of trust, and, by receiving this certificate originally or by transfer, assents thereto and agrees to be bound thereby.

"This certificate is transferable only on the books of the company under said declaration of trust by the registered holder thereof, either in person or by a duly authorized attorney, and on surrender thereof.

"In witness whereof the trustees under said declaration of trust herein designated as the Massie Drilling Company, caused their common seal to be hereto affixed and this certificate to be executed in their name and behalf by T. W. Connellee, their president, and attested by their secretary, this the 25th day of May, A. D. 1919. J. M. Collins, Secretary. T. W. Connellee, President. Attest: [Seal.] Massie Dr. Co."

There was more or less difference of opinion among the witnesses as to whether or not the signature of T. W. Connellee was made in ink with pen or with rubber stamp. However, the appellants did not deny the genuineness of the signatures on the certificate.

P. T. Pangburn testified by deposition that he did assist in the creation of the Massie Drilling Company; that he was an officer, but did not know in what way they used his name; that he did not authorize them to use his name "indiscriminately," but only as such officer; that he did not consent for his name to be used except in connection with the official acts; that he signed a "declaration of trust under which Massie Drilling Company was being operated"; that he only signed one instrument; that he could only say that it was a declaration of trust that he signed; that he does not know what interrogator means by "articles of association"; that he did not say that he had not signed articles of association; that he does not know whether the Massie Drilling Company was in existence in October, 1920; that if it was in existence it is probable he was an officer at that time; that certain literature was printed with his name on it; that he does not have copies of it and does not

know whether it was sent out or not; that he did not know what interrogator meant by "permitted" when asked if it was not a fact that he permitted his name to be used in connection with the Massie Drilling Company, and advertised the fact that he was one of its officers; that his name might have been used, as he was an officer of the company, but that he did not advertise the fact; that he did not receive any stock in the Massie Drilling Company; that the shares were of the par value of $1; that he was vice president of the Massie Drilling Company; that he did not have a copy of the declaration of trust; that if the Massie Drilling Company was in existence on August 19, 1920, he very likely was "acting" as one of the officers of the company.; that he was unable to testify as to any certain date for the reason that he has no independent recollection of the days inquired about, and has no access to the records or books of the company which have been lost, misplaced, or destroyed, and because the "organizer" of the company and the custodian of the company's records is dead.

T. W. Connellee testified that at the instance and request of Joe M. Collins, deceased, he did execute a declaration of trust, but did not consent for his name to be used in connection with the Massie Drilling Company as an officer or in any other way except as provided for in the declaration of trust; that he did not know what was meant by articles of association; that he only knew that he executed a declaration of trust which was executed for the purpose of organizing the Massie Drilling Company into a trust association; that he had not stated that it was not true as to the articles of association, because he did not know what was meant by such term; that he did not know that the declaration of trust that he executed was a trust; that he did not recall the exact date that the Massie Drilling Company was organized or created; that, if it was in existence on October 19, 1920, he was very likely an officer of said company, but that he could not recall the exact dates because he had no independent recollection of the same, and had no access to the records of the company, because the "organizer" of the Massie Drilling Company was dead, and the said organizer was also the custodian of all the records; that so far as he was able to ascertain the records had been lost, misplaced, or destroyed; that, if the Massie Drilling Company sent out any advertising matter to the effect that he was connected with it, he knew nothing about it; that he did not authorize them to send out such matter or advertisement, as they were "operating" under a trust agreement, and only consented for his name to be used in connection with the official acts of the company; that he was out of the state quite a

good deal during the year 1920, and if any advertising literature was mailed out he did not know about it, and could not attach copy of such literature; that he did not advertise the fact that he was one of the officers, because he had nothing to do with the advertising matter, and had no occasion to advertise himself as such officer; that he signed a declaration of trust after he had read the same and learned that it was a trust agreement and agreed to act as an officer of the company in any official way; that he had been president of the company; that he did not know what was meant by articles of association, but knew that he had signed the declaration of trust limiting the liability of the Massie Drilling Company; that it is not a fact that he helped organize or create the Massie Drilling Company; that he did not receive any stock in the Massie Drilling Company; that he was not promised any stock, and was not to receive any, either directly or indirectly; that he did not put a dollar into the company, and did not take anything out; that he did not sell stock to any of his friends or any one else, and did not offer any for sale; that he was not in the stock-selling business, had never sold any stock, and had never represented himself as an officer of the company.

There is also evidence that Joe M. Collins, either directly or indirectly, furnished or procured the sum of $2,500 with which to make the initial payment on a rotary drilling rig with equipment, purchased from Campbell-Borsom Company, and executed a chattel mortgage to secure two notes aggregating $6,500 in payment of the balance of the purchase price. The machinery was then turned over to T. O. Massie for the purpose of securing contracts and drilling wells.

[1] We are inclined to believe that a jury would have the right to conclude from all the evidence that appellants P. T. Pangburn and T. W. Connellee were partners. The evidence shows that the Massie Drilling Company was "created" and "operating" at the time and place of injury; that "this company" deposited money in the banks to pay off the men; that it made profits; and that the Massie Drilling Company, according to the literature found in the company's office in Fort Worth, was an "organization" that was "associated" under the laws of Texas, and was under the "control" of the defendants named in plaintiff's petition. It is not shown that this organization was incorporated. From this it is to be inferred that the company was an unincorporated association. It is not shown that the membership of the company consisted of any one outside of the defendants named. From this it may be assumed that the defendants named were the owners and only owners of the company. It is not shown that the association had any paid-up capital stock, but it does appear that the company put up money with which to pay the employees. The legitimate inference from this is that the members of the association put up the money for operating expenses. It is true that appellant Connellee denies that he put up any money into the company; but it was not necessary for him to subscribe for the reason that he could be a partner without investing his money in the concern. In that respect it is not shown that any member put money into the association, but it is evident that they or some of them put up or procured the money that was deposited in the banks, according to the testimony of Massie, "to be used in paying off these men at the beginning." The fact that the members did not put any money into the company did not prevent them from operating on credit or from borrowing money to operate on. Whatever association was formed by the declaration of trust was entered into by both defendants, for the reason that both admitted signing the instrument styled the "declaration of trust" under which the company operated. The profits that were earned, though never collected, belonged to the members of the association. It is immaterial that the business was a failure, and that as a consequence the appellants received no profit and expected none. One must be convinced from all the evidence that the appellants were engaged in a joint enterprise for pecuniary gain. The appellants assumed a relation that must be given the effect of a partnership. Freeman v. Huttig Sash & Door Co., 105 Tex. 571, 153 S. W. 122, Ann. Cas. 1916E, 446; McCamey v. Hollister Oil Co. (Tex. Civ. App.) 241 S. W. 689; Wells v. Mackay Telegraph-Cable Co. (Tex. Civ. App.) 239 S. W. 1001; Geiselman v. Anderson (Tex. Civ. App.) 242 S. W. 798.

[2] If the facts related are insufficient to constitute a partnership because of a failure to show that the association was created and conducted for the purpose of making money for the defendants, who managed and controlled it, we nevertheless believe the relation of master and servant existed between the appellants and appellee. If it be true, as stated by appellant Connellee, that the Massie Drilling Company was operating under a trust agreement, the members of such company would be liable for all obligations incurred within the legitimate scope of the agency employed. And, if it be true the Massie Drilling Company was a mere chimerical creature, as suggested by appellants, we think the law should not permit appellants to escape liability by operating under the mere fiction of a trust agreement. In this respect we seek to follow the law announced and applied by the Supreme Court of this state in the case of Sergeant v. Goldsmith Dry Goods Co., 110 Tex. 490, 221 S. W. 261, 10 A. L. R. 742, wherein Chief Justice Phillips said:

"As to third persons dealing with the association and to whom it incurred lawful debts contracted within the powers of whatever agency it employed, that is, claimants falling within the second and third classes, the members of the association, as before stated, are jointly and severally liable as principals. They could not create an organization, give it a name, invite others to sell it supplies or render it services, for instance, for their benefit, and not as principals be liable for such debts. The association was a fiction except as the members stood behind it. They are necessarily liable for debts to third persons incurred in carrying out the purposes for which they were associated. They were the association. Such transactions inured to their joint and several benefit. They should in the same measure pay what is owing upon them. Lewis v. Tilton, 64 Iowa, 220, 52 Am. Rep. 436, 19 N. W. 911; Davison v. Holden. 55 Conn, 103, 3 Am. St. Rep. 40, 10 Atl. 515; Willcox v. Arnold, 162 Mass. 577, 39 N. E. 414."

[3] It was not improper, we believe, for the trial court to submit to the jury whether or not the defendants were engaged in a "joint enterprise." We think that fact was an unimportant element, though perhaps not the sole test, in determining partnership. Freeman v. Huttig Sash & Door Co., 105 Tex. 571, 153 S. W. 122, Ann. Cas. 1916E, 446. If the appellants desired any definitions or explanations it was their duty to prepare and present special charges. The error, if any, was one of omission, and not of commission. O'Neal v. Bush & Tillar, 108 Tex. 258, 173 S. W. 869, 177 S. W. 953, 191 S. W. 1134; Farmers' & Merchants' State Bank of Lelia Lake v. Roy Guffey, 255 S. W. 462, not yet [officially] reported.

[4] Appellants complain of the action of the trial court in refusing to consider a special exception to plaintiff's petition seeking recovery of $140 alleged to be due as wages. The ground of the exception was that there was a misjoinder of causes of action. There was a local rule of the trial court requiring all pleadings to be on file 24 hours before announcement of ready for trial. In this case a difference arose between counsel about a prior alleged verbal agreement made by plaintiff's counsel to omit the claim of $140 from the petition. We cannot determine or decide the controversy between counsel, but it appears that the pleadings of both sides had been on file some time. Upon the facts stated counsel for appellants failed to show their right, as a matter of law, to file additional pleadings. Due order of pleading required the exception to be added as an amendment to the answer already filed. Under the circumstances it cannot be said that the trial court abused its discretion in refusing to pass upon the exception. Articles 1824, 1825; Harris v. Wheeler, 255 S. W. 206, decided by this court May 3, 1923; Lipscomb v. Perry, 100 Tex. 122, 96 S. W. 1069.

However this may be, the appellants failed to show injury for the reason that the plaintiff voluntarily dismissed this part of the cause of action when the judgment was rendered.

Many other assignments and propositions have been advanced in appellant's able brief, but we believe that what we have said is sufficient to dispose of the material questions raised.

The judgment of the trial court is affirmed.